UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Edward Slocum     Plaintiff v. Town of Whitman, Chief Scott D. Benton and Town Administrator Frank J. Lynam     Defendants | ) ) ) ) ) ) ) ) ) ) ) ) |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

In this action the plaintiff, Edward Slocum (hereinafter "Plaintiff" or "Sgt. Slocum"), seeks redress for substantial violations of his rights under the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA"), §504 of the Rehabilitation Act, and the Massachusetts anti-discrimination laws, M.G.L. c. 151B. Defendant, Town of Whitman ("Whitman" or "Department") by and through its agents and employees have violated the ADA and M.G.L. c. 151B in connection with its employment of Sgt. Slocum, a Police Officer, with the Whitman Police Department. Specifically, the Defendants, by and through its employees, discriminated against Plaintiff on the basis of disability and perceived disability. This case also presents a claim for retaliation against the Town of Whitman based upon the Massachusetts Whistleblower Protection Act.

### JURISDICTION

The Plaintiff asserts federal jurisdiction pursuant to section 107(a) of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12117(a), which incorporates

1

sections 706(f)(3) and 710 of Title VII, 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-9, and 29 U.S.C. § 161(2).

## PARTIES

1. The Plaintiff is Edward Slocum, an individual residing in Duxbury, County of Plymouth, Commonwealth of Massachusetts.

2. Defendant Town of Whitman, is a municipality duly incorporated under the laws of the Commonwealth of Massachusetts

3. The Defendant, Chief Benson, is Chief of the Whitman Police Department, with a place of business located in Whitman, Plymouth County, Commonwealth of Massachusetts.

4. The Defendant, Frank Lynam, was the former Town Administrator for the Town of Whitman at the time of these relevant events.

## ADMINISTRATIVE PREREQUISITES

5. The Plaintiff has filed a timely Charge of Discrimination at the Massachusetts Commission Against Discrimination, (MCAD) charging the Defendants with substantial violations of Plaintiff's rights under the Massachusetts anti-discrimination laws, M.G.L. c. 151B.

6. The Charge of Discrimination was filed jointly with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission (EEOC) within the time required by Massachusetts General Laws Chapter 151B.

7. Plaintiff has withdrawn his Charge of Discrimination with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission and has chosen to proceed in this forum.

## FACTS

8. Sgt. Edward Slocum (hereinafter "Mr. Slocum" and/or "Sgt. Slocum") is a tenured full-time permanent sworn police officer with approximately thirty (30) years of service with the Whitman Police Department (hereinafter "WPD).

9. The Plaintiff was promoted to Police Sergeant in 1994 and had successfully served in that position until his recent wrongful demotion to Patrolman as a result of an incident that, in part, gave rise to the underlying litigation.

10. It's important to note that Sgt. Slocum, based upon his proven ability, has also previously served as Acting Police Chief for the Defendant Town of Whitman for approximately one year after the retirement of a former chief in 2006.

11. Sgt. Slocum's prior service as the Acting Chief had also made him a prominent candidate for the recently vacated Whitman Chief of Police position in 2019.

12. Sgt. Slocum's prior service as Acting Chief for the Town of Whitman has placed him in an antagonistic position to the Defendant, Chief Scott Benton ("Chief Benton"), who personally disliked the Plaintiff and who saw him as a threat to Benton's ability to properly manage the Department.

13. Sgt. Slocum is also certified first-responder, trained to render emergency medical care, including CPR, first-aid, and has been trained to recognize signs of a wide range of common medical issues.

14. During the course of his thirty plus years of experience as a police officer, the Plaintiff has regularly encountered hundreds of medical emergencies in the line of duty, including drug overdoses, heart attacks and strokes.

15. These experiences have given him insight into his own medical issues. Sgt. Slocum is also an individual living with disabilities.

16. Sgt. Slocum has previously been diagnosed with migraine headaches, Dyslexia, Dysgraphia and ADHD.

17. Sgt. Slocum's disabilities limit one or more of his major life activities, including without limitation, learning, reading, writing, concentrating, and communicating. Despite these issues, Sgt. Slocum has been able to successfully overcome his disabilities and perform his law enforcement responsibilities with minimal accommodation.

18. For example, when Sgt. Slocum engages in certain job duties (such as with duties consisting of voluminous, timed, and/or dead-lined paperwork) it can be stressful and cause him anxiety, particularly if there is an overload or backlog of such work to accomplish.

19. In 2013, Sgt. Slocum disclosed his disabilities to the Civil Service Commission ("CSC") for an upcoming and future promotional examinations. He requested time extensions, the use of a personal computer for any written documents, and to be isolated from other examiners while testing.

20. In or around September 2016, Sgt. Slocum also disclosed his disabilities to the Town of Whitman, by and through disclosure to Town Administrator Frank J. Lynam ("Lynam") and the then Chief of Police Scott D. Benton.

21. Sgt. Slocum had not previously disclosed his disabilities to his supervisors because he was fearful that he would be treated differently and discriminated against if he did so.

22. Whenever Sgt. Slocum felt the onset of a migraine headache (which happened on occasion when performing paperwork duties), Sgt. Slocum learned that he could alleviate his symptoms by simply taking a break from his duties for 10-20 minutes, reducing lighting and meditating during this brief period of time.

23. In August 2016, an incident occurred where Sgt. Slocum received discipline in the form of a three (3) day suspension without pay for his attempts of self-help to alleviate these symptoms.

24. On that occasion, Chief Benton walked into Sgt. Slocum's office while he had the lights reduced and was meditating. Sgt. Slocum was having a migraine headache at the time.

25. Sgt. Slocum attempted to explain his medical issues, but Chief Benton, who personally disliked the Plaintiff, refused to listen to him.

26. It is important to note that Sgt. Slocum at that point in time had never been disciplined previously. Despite that fact, Chief Benton with the approval of Defendant Lynam imposed a three day suspension from duty for that incident.

27. The Town of Whitman has an internal policy of progressive discipline for its employees. A comparison of discipline imposed upon other Whitman police officers reveals that the Defendants have imposed significantly less discipline upon other members for more egregious allegations.

28. This incident and the imposition of significant discipline by Defendant Benton made Sgt. Slocum realize the need to disclose his disabilities and formally obtain a reasonable accommodation so that he did not receive similar discipline in the future for addressing his disability symptoms at work.

29. Along with the disclosure of his disabilities, the Plaintiff submitted medical documentation verifying his diagnoses, the impact his disabilities had on his job, and requested reasonable accommodations to assist him in performing certain functions of his job.

30. Neither Defendants Lynam, Chief Benton, nor anyone else from the Town of Whitman engaged in a meaningful or reasonable accommodation dialogue with Sgt. Slocum.

31. To the contrary, the Defendants began a campaign to deny the existence of any disability and attempted to malign the Plaintiff.

32. The Town, through Defendant Lynam in particular, continuously required additional medical documentation and information from Sgt. Slocum to prove the existence of his disabilities.

33. Each time Sgt. Slocum provided the information requested, the Town would counter with a pretextual reason for asking for additional medical information, all the while delaying Sgt. Slocum's accommodations.

34. Sgt. Slocum made his initial request for a reasonable accommodation from the Defendants in October 2016 by simply requesting the use of his personal computer at work.

35. The Plaintiff's personal computer contained the speech-to-text and text-to-speech software to assist with his reading and writing and to take approximately 10-20 minute break in a private spot as needed for any occasional headaches.

36. These "breaks" were not a daily occurrence and the Plaintiff would go for weeks or even a month without the need for this accommodation. Moreover, he was always physically able to respond in the event of an emergency.

37. It is important to note that Sgt. Slocum was required by the Defendants to extend his workday for any period of time that was lost as a consequence of taking a break for a medical issue.

38. It was not until late January 2017, nearly four months later, that the Town agreed to provide any form of accommodation. The Town denied Sgt. Slocum's request to take short breaks as needed for his migraine headaches.

39. The Town repeatedly asserted that the Plaintiff's medical documentation did not support his need for such breaks or denied that his migraines were a symptom resulting from his combined disabilities.

40. The Town's assertions regarding Sgt. Slocum's medical condition were contrary to the provided medical documentation clearly stating otherwise.

41. On or about June 22, 2017 Sgt. Slocum sent a letter, through counsel, addressed to Defendant Lynam, expressing concerns that the Town had not meaningfully engaged in the reasonable accommodation dialogue required by law.

42. This correspondence stated that the accommodations provided to Sgt. Slocum in May 2017 were not sufficient and requested the dialogue to commence through counsel so Sgt. Slocum's needs could be met.

43. The letter also expressed concern about the ongoing retaliation Sgt. Slocum had experienced since disclosing his disability. The letter detailed the deterioration in Sgt. Slocum's workplace environment, including, but not limited to, Chief

5

      Benton's overbearing supervision of Sgt. Slocum, Benton's unwarranted criticism of Sgt. Slocum's work performance and Defendant Benton's unjustifiable discipline for minor infractions (for which other officers who had similar incidents were not disciplined).

44. Over time, Sgt. Slocum's fellow officers began to refer to the reprimands by Defendant Benton and discipline toward him as the "Slocum Rule" because Chief Benton applied disciplinary rules differently to Sgt. Slocum than other members of the Department.

45. Sgt. Slocum subsequently requested the following reasonable accommodations as part of a comprehensive reasonable accommodation plan:

    - To take approximately 10-20 minute breaks in a private spot, e.g. in my office, as needed for headaches (including dimming lights and meditation);
    - Voice activated software for his work computer;
    - Speech to text software (such as Google Docs or Dragon);
    - Text to speech software (such as Natural Reader);
    - High-grade grammar and spell checker software (such as Grammarly);
    - Headset and microphone to utilize these software programs; and
    - Larger computer monitor.

46. Immediately following the formal written request for these accommodations, the Town began a campaign that alleged Sgt. Slocum's disabilities and symptomology raised "serious" concerns about whether he posed a significant threat to the safety or health of himself, his fellow officers and/or the public, and thus, whether he should be permitted to continue to perform in his current position or in his job at all.

47. This action was clearly retaliatory and done in close temporal proximity to the written request for accommodation by the Plaintiff.

48. According to the Defendants, these concerns were of such severity that the Town demanded that Sgt. Slocum submit to a Neuropsychological evaluation, which he did on October 16, 2017.

49. The Defendants' assertions that Sgt. Slocum's disabilities raised safety concerns in the performance of his job that necessitated a Neuropsychological evaluation was clearly pretextual.

50. The true underlying reason for forcing Plaintiff to undergo this evaluation was to create a "plausible justification" for the Town to terminate the Plaintiff's employment as a police officer based upon fictitious public safety concerns.

51. The secondary consequence and goal of this evaluation was designed to humiliate and embarrass Plaintiff, and ultimately, to make Sgt. Slocum so miserable in his position that he would quit.

52. Sgt. Slocum's fellow officers improperly learned of the neuropsychological evaluation required by the Town, which subsequently resulted in his fellow officers questioning his mental state and his decision-making abilities, thereby resulting in a loss of reputation and trust among his peers.

53. The release of the information pertinent to this evaluation by the Defendants was a serious violation and invasion of Sgt. Slocum's rights of privacy pursuant to M.G.L. c. 214, Section 1B.

54. Sgt. Slocum's position as a supervisor was further diminished because his peers and subordinates were actively encouraged to report on his day-to day-duties and actions to Chief Benton.

55. On November 2, 2017, Sgt. Slocum met with and was evaluated by Dr. Aaron Nelson, Chief of the Psychology and Neuropsychology Department at Brigham & Women's Hospital ("Dr. Nelson").

56. It's important to note that Dr. Nelson was chosen by the Town of Whitman, ostensibly by Defendant Lynam to perform the evaluation of the Plaintiff. Dr. Nelson was a prominent neuropsychiatrist who performed an extensive battery of tests and lengthy evaluation of the Plaintiff.

57. Following this examination and for the ensuing month, the Plaintiff's anxiety became overwhelming and he became increasingly fearful that the Defendants would use Dr. Nelson's written conclusions as a basis to terminate his employment.

58. Finally, on December 1, 2017, Dr. Nelson wrote a seven (7) page report (which will be filed separately with permission of the Court under seal) which answered the two questions presented to him by the Defendants. He stated, in part, as follows with regard to the Plaintiff:

**(1). Are there any neuropsychological conditions which would prevent him from performing the essential functions of his position without posing significant risk to the safety and health of himself or others?**

*No. Although Sgt. Slocum does have neuropsychological conditions (see below), it is my opinion that these conditions are manageable and do not necessarily undermine his ability to function in his role as a police officer. Furthermore, Sgt. Slocum has had these conditions on a lifelong basis and has functioned effectively in his position for almost 30 years.*

**(2). What is the nature and severity of any diagnosis, condition, or impairment which might impact the performance of his assigned duties, and the extent and anticipated duration of same?**

*The history and examination are highly consistent with diagnoses of Language Disorder with expressive and receptive elements and ADHD, Predominantly Inattentive Presentation. The severity of these diagnoses is in the moderate range. Regarding anticipated duration, these are chronic conditions that will persist on a lifelong basis.*

*A brief meditation break in order to prevent or abort tension headaches is suggested. He estimates that he needs to do this perhaps once per week and that the average duration of the break is several minutes.*

*I also recommend that he consult with a headache specialist as part of his routine medical care. Many individuals who experience recurrent headaches can be taught to recognize a headache aura or prodromal sign and take a medicine to abort the episode before it fully manifests.*

59. Dr. Nelson clearly stated his conclusions that Sgt. Slocum was not a safety threat and that meditation was an appropriate means of addressing his disability symptomology.

60. Dr. Nelson's conclusions were not what Mr. Lynam and Chief Benton had anticipated. It also became clear that the Town would have to find another way to remove Sgt. Slocum from his job. They did so approximately three weeks later.

### The November 29, 2017 Incident[1]

61. On November 29, 2017, Sgt. Slocum was the Patrol Supervisor on the overnight shift (12 AM to 8 AM). Sgt. Slocum was dispatched to the scene after a call for service on the "non-emergency" line from a resident who reported a truck was parked in front of his house with a party sleeping in it.

62. No other information indicating any other criminal activity was reported or associated with this call for service to the non-emergency line.

63. Upon arrival, Sgt. Slocum attempted to wake the occupant, an individual later identified by the Civil Service Commission as "Mr. B." Sgt. Slocum knocked on the driver side window (which was fully closed) and bang on the window with his flashlight, shined his flashlight into the interior and repeatedly shook the truck.

---

[1] The description of the "November 29, 2017 Incident" and quotations in this complaint are taken in large measure from the findings made by the Civil Service Commission after a hearing on this matter. Those findings and conclusions are incorporated for all purposes in the Plaintiff's Complaint.

8

64. Mr. B was "responsive" to the knocking and "began to move and wiggle in his seat." He "squinted" when the flashlight was shined at him, but never opened his eyes or further acknowledged that he knew of Sgt. Slocum's presence. Sgt. Slocum tried to open the driver's side door, but found it was locked. He walked around to the passenger side and found that door also locked.

65. After approximately 20 minutes on the scene, Sgt. Slocum decided that "Mr. B" was simply in a deep sleep and was not in need of any immediate medical attention.

66. The Plaintiff reported: *"Unable to get him awake. Moving around in there. Keys out of the ignition. No Threat. Looks fine at this point."* At 7:17 AM, Sgt. Slocum cleared the call and said he would *"let the next shift know and they will come by and check on him."*

67. At the 8:00 AM change-of-shift roll call, Sgt. Slocum spoke to the day shift commander, Lt. May-Stafford. He advised her about "Mr. B", whom he described as asleep in his truck, moving around, with no apparent signs of drug or alcohol use, and that he was unable to get him to unlock the door to the vehicle.

68. At approximately 8:30 AM, after being briefed and reviewing the incident log, Lt. May-Stafford and Patrolman Stokinger proceeded to the scene. Officer Stokinger followed the same procedure used by Sgt. Slocum in an attempt to wake "Mr. B", by banging on the door and shaking the truck, with similar lack of success

69. At approximately 8:32 AM, after further knocking on the window, Mr. B "woke up" and opened the truck door, revealing a strong odor of alcohol. A field sobriety test was not performed by the officers on scene.

## The Defendants' Internal Investigation

70. There were no external complaints made by any citizens regarding Sgt. Slocum's actions that evening. No person was injured, and no individual's civil rights were violated by the actions taken by the Plaintiff.

71. Notwithstanding the lack of any complaint, on November 30, 2017, an internal investigation was launched by the Department, and Sgt. Slocum was immediately placed on administrative leave.

72. There was no justifiable reason for placing Sgt. Slocum on administrative leave other than to financially impact him by limiting his ability to work overtime and/or details.

73. While placing an employee on administrative leave can be an appropriate measure in the event of a major disciplinary concern, such as a police related shooting, it can be also be used as a punitive measure to adversely affect an officer by

9

reducing their financial opportunities for a lengthy period of time while the investigation is ongoing.

74. Sgt. Slocum was not permitted to return to work in any capacity from November 30, 2017 until June 12, 2018. During the entire seven months that Sgt. Slocum was placed on paid leave, he was not permitted to work details or overtime.

75. The punitive actions of the Defendants in placing him on administrative leave reduced the Plaintiff's income by approximately $5,000 each month.

76. In an attempt to further embarrass and humiliate Sgt. Slocum, his badge and key FOB for entrance into the police department were deactivated by the Defendants, and he was informed that he was not permitted to enter the building for any reason.

77. No other Whitman police officer has been similarly placed on formal Administrative Leave for any comparable time period during Defendant Benton's time as Chief of Police, including during the pendency of an internal investigation for far more serious allegations.

78. In fact, after another Whitman officer who was involved in an on-duty shooting, was given administrative "days off" rather than be placed on administrative leave.

79. Deputy Chief Timothy Hanlon ("Hanlon") was assigned by Defendants Chief Benton and/or Mr. Lynam to conduct the internal affairs investigation of the Plaintiff.

80. Despite Deputy Chief Hanlon's assignment, Chief Benton and Mr. Lynam participated in and controlled the investigation behind the scenes.

81. Before and during the pendency of this "investigation," Chief Benton continued his discriminatory conduct including the issuance an unjustified written warning to Sgt. Slocum for an alleged error in denying the issuance of a gun permit.

82. The practice of "papering" a police officer with minor infractions is commonly employed to make their disciplinary record seem more significant than warranted.

83. The Town also refusal to install the computer software that they had previously agreed to provide as a reasonable accommodation – until Sgt. Slocum's counsel contacted Whitman's attorney about the refusal.

84. In mid-December 2017, the Town ceased its participation in the reasonable accommodation dialogue altogether. The reason given was that the ongoing Internal Affairs "investigation" results were going to make the continuing dialogue unnecessary, which suggested that the Town intended to terminate Sgt. Slocum.

85. This information created additional emotional stress on Sgt. Slocum as well as his family who were totally dependent upon his income for their subsistence.

86. On January 8, 2018, Deputy Chief Hanlon submitted a report of his Internal Investigation into Sgt. Slocum's conduct relative to the November 29, 2017 incident.

87. The Plaintiff alleges that this Internal Affairs investigation and conclusions made were further retaliation for his efforts to secure reasonable accommodations and as a consequence of the letter from Dr. Nelson validating his disabilities.

88. The report concluded that Sgt. Slocum "failed to act in the performance of his duties as a Whitman Police Officer, as a Superior Officer and as a "*community caretaker*," allegedly by failing to take required action to appropriately determine Mr. B's well-being in his initial response and in his failure to follow-up prior to the end of his shift.

89. Hanlon's report found that this alleged misconduct violated the WPD's Rules and Regulations, 1.F.9 (Required Conduct – Attention to Duty; 1.F.19 (Devotion to Duty); 1.G.10.c (Prohibited Conduct – Incompetence; and 1.G.16 (Neglect of Duty).

90. By letter dated April 26, 2018, Sgt. Slocum was officially informed that the Whitman Board of Selectmen, voted to adopt the Hearing Officer's report and imposed the following discipline:

    A. For the violation of the WPD Rules and Regulations – 45-day suspension
    B. For the violation of the WPD Rules and Regulations and "clear and convincing evidence of a loss of confidence in the Sgt. that permeates the Whitman Police Department" – reduction in rank from Sgt. to Police Officer;
    C. For the lack of working knowledge of the Community Care (sic) Doctrine – retraining as determined by the WPD Chief of Police.

91. Until Sgt. Slocum's demotion, no WPD superior officer had been disciplined by a demotion of rank at any time during the tenure of Chief May-Stafford or Chief Benton.

92. By comparison, in 2011, then Chief May-Stafford imposed a one-day suspension on another officer who had failed to appear at a scheduled court hearing so that he could take his daughter to an amusement park and, then, lied to superior officers about the reason for his absence.

93. This officer was later promoted to Sergeant by Chief Benton.

94. Following the Board of Selectmen's vote, the Defendants refused to permit Sgt. Slocum to even enter the police station to gather his belongings that needed to be removed from his office. Instead, members of the Department unnecessarily searched through Sgt. Slocum's property on several occasions.

95. The Plaintiff alleges that the severity of the disciplinary sanction of demotion and suspension from duty for 45 days was retaliatory and done as a consequence of his requests for an accommodation and for the purpose of forcing him to retire from the department.

96. Sgt. Slocum served his 45-day suspension from duty without pay from April 25, 2018 through June 11, 2018. On June 12, 2018, after more than six (6) months, Sgt. Slocum was returned to active duty as a demoted Patrol Officer.

97. On Sgt. Slocum's first day at work as a patrolman, he was summarily informed that he had to take his accrued, but unused vacation time immediately or be forced to lose it. This caused him to immediately be out of work for several additional weeks until his return on July 6, 2018.

98. Upon his return to work, the computer he had previously been assigned to use to assist with his disabilities was moved to an open location.

99. Other officers were unnecessarily informed that his computer contained "special software for Slocum to use for disabilities." Sgt. Slocum's gun permitting duties were removed and he was reassigned to patrolman duties with less seniority.

100. On June 12, 2018, Chief Benton attempted to remove Sgt. Slocum's seniority status and benefits in violation of the Union Collective Bargaining Agreement.

101. More specifically, Chief Benton issued Sgt. Slocum a badge number that reflected only four (4) years of service rather than the twenty-eight (28) years of actual service.

102. In a further attempt to embarrass Sgt. Slocum, Chief Benton refused to assign Sgt. Slocum to any of the responsibilities as an Officer in Charge ("OIC"). Past practice is for the most senior Officer on duty to be assigned OIC when one is needed. The OIC is paid an additional ten percent (10%) for that particular shift.

### Civil Service Commission Appeal

103. Sgt. Slocum subsequently appealed the 45-day suspension and demotion from the rank of Sergeant to the Civil Service Commission ("CSC").

104. After a lengthy hearing, the Commission unanimously agreed with the decisions made by Sgt. Slocum and found that he had acted within his discretion in response to the call for service regarding "Mr. B," on November 29, 2017.

105. On April 23, 2020, the Commission found the following:

    "He (Sgt. Slocum) promptly established that the vehicle was legally parked, the motor was not running, and nothing gave rise to reasonable suspicion or probable cause to believe that laws had been broken… Sgt. Slocum also acted appropriately, and consistent with the law, when he paused to take into account that further effort to interact with Mr. B required the use of force to break into the truck, and elected, instead to brief the next shift (starting within the hour) to follow up. His instincts were sound that that there was a greater level of uncertainty associated with a decision to break into a locked vehicle to access a passenger inside than if he were able to gain access to Mr. B through an unlocked door. In exercising his judgment about what to do, and in the absence of "objective facts" that Mr. B. was in "immediate" jeopardy of serious injury and no "reasonable suspicion" of impairment or criminal behavior, he was entitled to consider that uncertainty."

106. The Commission determined that the Whitman Police Department had failed to meet it burden to establish "just cause" for the severe discipline imposed on Sgt. Slocum.

107. The Commission ordered that Sgt. Slocum's discipline, including the 45-day suspension and demotion vacated and that he be restored to his position as a Whitman Sergeant and receive all other pay and benefits to which he was entitled.

108. Despite the order of the Commission, the Town and its employees continued over the course of the next year to retaliate and discriminate against Sgt. Slocum in a multitude of ways. The overt retaliation includes, but is not limited to, shift changes, refusal to accommodate, and significant change in duties and responsibilities.

109. Even after winning his CSC appeal which required Sgt. Slocum to be reinstated to his former position, the Town intentionally stalled and prevented Sgt. Slocum from resuming in his role. To date, he has not received full compensation for his lost earnings, including overtime and details or the interest on the money owed to him.

110. On January 10, 2019, Chief Benton sent an email regarding abuse of sick time. This email was specifically directed at Sgt Slocum, due to the fact he had used all ten (10) of his allotted sick days.

111. The results of these ongoing retaliatory actions have increased the overall stress of coming to work for Sgt. Slocum. Shortly after receiving this email notification

13

from Chief Benton, Sgt. Slocum became concerned that Defendants Benton and Lynam would use the claim of sick leave "abuse" as another pretextual basis to terminate the Plaintiff from his employment.

112. Over the ensuing days, the Plaintiff's personal well-being worsened, and he became progressively more concerned about keeping his job at the police department.

113. On January 14, 2019, while working his assigned shift, Sgt. Slocum suffered a stroke.

114. Despite the onset of the physical symptoms he was undergoing at work, Sgt. Slocum refused treatment and continued to work his regularly scheduled shift due to his overwhelming fear that if he left work for any medical reason he would be disciplined and/or terminated by the Town.

115. Sgt. Slocum was subsequently evaluated and determined to have suffered a stroke while on duty. The occurrence and timing of this stroke was directly related to the significant amount of workplace stress that Sgt. Slocum had experienced over the course of the preceding year.

116. Correspondence from the Plaintiff's physician regarding the impact of the added stress to his work environment will be filed separately with permission of the Court under seal.

117. The conduct alleged above, including the unwarranted discipline and demotion in rank subsequently vacated by the CSC, as well as unwarranted investigations, threats of discipline and invasion of privacy regarding protected medical information all constitute discrimination based on Sgt. Slocum's proven disability, denial of reasonable accommodations, and retaliation for engaging in the protected activity of complaining about discrimination and the refusal to accommodate.

118. As set forth above, the Defendant Town and its employees had the authority or duty to act on behalf of the Town and/or Police Department, their actions or failures to act (including acquiescence and participation in known discrimination and retaliation by others) was in deliberate disregard of our client's rights and with an intent to interfere with the exercise of his rights.

119. As a consequence of the Defendant's actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

CAUSES OF ACTION

COUNT I: FAILURE TO ACCOMMODATE UNDER 42 U.S.C. 12101 ET SEQ

120. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

121. Defendants, Town of Whitman, Frank Lynam and Chief Benton failed to reasonably accommodate Plaintiff's disability, failed to engage in an interactive process to properly and reasonably address his health concerns, and as a result he was subject to adverse employment actions by means of Defendants discriminatory conduct and other retaliatory and unfair treatment.

122. Defendant's conduct, as alleged above in this Complaint, constitutes unlawful disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.

123. As a direct and proximate result of Defendants' unlawful disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq., Plaintiff, Edward Slocum, has incurred and continues to incur substantial loss of wages, earning capacity and fringe benefits, has suffered emotional distress and anguish of mind, and has suffered, and will continue to suffer, other damages as he will show at trial.

124. Plaintiff complied with the requirement(s) of 42 U.S.C. 12101, et seq. and 42 U.S.C. 2000e-5(e)(1) when he properly and in a timely manner filed a complaint with the Massachusetts Commission Against Discrimination, said Complaint which was cross-filed with the Equal Employment Opportunities Commission, alleging that the defendant suspended him from his employment because and on account of his disability and otherwise subjected him to unlawful disability discrimination.

125. As a consequence of the Defendant's actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

COUNT II: FAILURE TO ACCOMMODATE UNDER 42 U.S.C. 12101 ET SEQ DISCRIMINATION BASED ON PLAINTIFF "REGARDED AS" DISABLED

126. Plaintiff is disabled within the meaning of the ADA, 42 U.S.C. § 12102(2), insofar as he has an impairment that substantially limits one or more major life activities, has a record of such an impairment, or was regarded by Defendants as having such an impairment.

127. Defendants intentionally and wrongfully discriminated against Plaintiff on the basis of being "regarded as" disabled in violation of the ADA when it wrongfully disciplined and retaliated against the Plaintiff because of his disability.

128. The conduct alleged above, including the unwarranted discipline and demotion in rank subsequently vacated by the CSC, as well as unwarranted investigations, threats of discipline and invasion of privacy regarding protected medical information all constitute discrimination based on Sgt. Slocum's proven disability, denial of reasonable accommodations, and retaliation for engaging in the protected activity of complaining about discrimination and the refusal to accommodate.

129. As set forth above, the Defendant Town and its employees had the authority or duty to act on behalf of the Town and/or Police Department, their actions or failures to act (including acquiescence and participation in known discrimination and retaliation by others) was in deliberate disregard of our client's rights and with an intent to interfere with the exercise of his rights.

130. As a consequence of the Defendant's actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

COUNT III: VIOLATION OF §504 OF THE REHABILITATION ACT

131. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

132. Defendants' conduct constitutes a violation of Plaintiff's employment rights, including the right to reasonable accommodations and protections from discriminatory and retaliatory suspension from employment, under §504 of the Rehabilitation Act.

133. As a result of the above-described actions, Plaintiff has suffered substantial damages, including significant physical injuries, lost salary and benefits, damage to his career and emotional distress.

COUNT IV: ILLEGAL DISCRIMINATION BASED ON ACTUAL HANDICAP (G.L. ch. 151B, §4 (16))

134. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

135. Defendants, Town of Whitman, Defendant Frank J. Lynam and Chief Benton illegally discriminated against Plaintiff based on his actual disability in violation of Massachusetts General Laws chapter 151B, § 4(16) for reasons which include but are not limited to refusing to provide him with reasonable accommodations and effectively terminating his employment. Defendants knew or had reason to know that its acts violated Massachusetts General Laws chapter 151B, § 4(16).

136. The conduct alleged above, including the unwarranted discipline and demotion in rank subsequently vacated by the CSC, as well as unwarranted investigations,

      threats of discipline and invasion of privacy regarding protected medical information all constitute discrimination based on Sgt. Slocum's proven disability, denial of reasonable accommodations, and retaliation for engaging in the protected activity of complaining about discrimination and the refusal to accommodate.

137. As set forth above, the Defendant Town and its employees had the authority or duty to act on behalf of the Town and/or Police Department, their actions or failures to act (including acquiescence and participation in known discrimination and retaliation by others) was in deliberate disregard of our client's rights and with an intent to interfere with the exercise of his rights.

138. As a consequence of the Defendant's actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

139. As a result of the above-described actions, Plaintiff has suffered substantial damages, including significant physical injuries, lost salary and benefits, damage to his career and emotional distress.

### COUNT V: ILLEGAL DISCRIMINATION BASED ON PERCEIVED HANDICAP
(G.L. ch. 151B, §4 (16))

140. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

141. Defendants, Town of Whitman, Defendant Frank Lynam and Chief Scott Benton illegally discriminated against Plaintiff based on its perception that he was disabled in violation of Massachusetts General Laws chapter 151B, § 4(16) for reasons which include but are not limited to wrongfully suspending his employment. Defendants knew or had reason to know that its acts violated Massachusetts General Laws chapter 151B, § 4(16).

142. The conduct alleged above, including the unwarranted discipline and demotion in rank subsequently vacated by the CSC, as well as unwarranted investigations, threats of discipline and invasion of privacy regarding protected medical information all constitute discrimination based on Sgt. Slocum's proven disability, denial of reasonable accommodations, and retaliation for engaging in the protected activity of complaining about discrimination and the refusal to accommodate.

143. As set forth above, the Defendant Town and its employees had the authority or duty to act on behalf of the Town and/or Police Department, their actions or failures to act (including acquiescence and participation in known discrimination and retaliation by others) was in deliberate disregard of our client's rights and with an intent to interfere with the exercise of his rights.

144. As a consequence of the Defendant's actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

145. As a result of the above-described actions, Plaintiff has suffered substantial damages, including significant physical injuries, lost salary and benefits, damage to his career and emotional distress.

## COUNT VI: ILLEGAL DISCRIMINATION BASED ON RECORD OF HANDICAP
(G.L. ch. 151B, §4 (16))

146. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

147. Defendants, Town of Whitman, Defendant Frank Lynam and Chief Benton illegally discriminated against Plaintiff based on his record of having a disability in violation of Massachusetts General Laws chapter 151B, § 4(16) for reasons which include but are not limited to refusing to provide a reasonable accommodation, disparate treatment and wrongfully suspending his employment. Defendants knew or had reason to know that its acts violated Massachusetts General Laws chapter 151 B, § 4(16).

148. The conduct alleged above, including the unwarranted discipline and demotion in rank subsequently vacated by the CSC, as well as unwarranted investigations, threats of discipline and invasion of privacy regarding protected medical information all constitute discrimination based on Sgt. Slocum's proven disability, denial of reasonable accommodations, and retaliation for engaging in the protected activity of complaining about discrimination and the refusal to accommodate.

149. As set forth above, the Defendant Town and its employees had the authority or duty to act on behalf of the Town and/or Police Department, their actions or failures to act (including acquiescence and participation in known discrimination and retaliation by others) was in deliberate disregard of our client's rights and with an intent to interfere with the exercise of his rights.

150. As a consequence of the Defendant's actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

151. As a result of the above-described actions, Plaintiff has suffered substantial damages, including significant physical injuries, lost salary and benefits, damage to his career and emotional distress.

## COUNT VII: INVASION OF PRIVACY

152. The Plaintiff incorporates herein the previous allegations set forth in this Complaint.

153. The Defendants by their actions more fully described above have intentionally violated the terms of M.G.L. c. 214, section 1 B, which states that "a person shall have a right against unreasonable, substantial or serious interference with his privacy.

154. The Defendants by their actions have inflicted emotional distress on the Plaintiff by their wrongful release and disclosure of private facts about the Plaintiff including, but not limited to highly personal medical information regarding the Plaintiff's medical treatment, diagnosis and disabilities which were of no concern of the public or members of the Department.

155. The Defendants have also, by their actions more fully described above, intentionally violated M.G.L.c. 214, section 1 B, including, but not limited to, placing the Plaintiff in a "false light" to the public by wrongfully retaliating against him, demoting him, falsely charging him with dereliction of duty and suspending him for a period of 45 days.

156. These acts were publicly disseminated with the express intent of causing, and did cause the Plaintiff emotional distress, humiliation and loss of reputation and status in the Town of Whitman and within the law enforcement community at large.

157. The Defendants, individually and jointly cast the Plaintiff in a "false light" by disseminating information to the public that they possessed "clear and convincing evidence of a loss of confidence in the Sgt. that permeates the Whitman Police Department" and that this false light warranted a "reduction in rank from Sgt. to Police Officer;"

158. The Defendants, individually and jointly cast the Plaintiff in a "false light" by disseminating information to the public that they possessed evidence that the Plaintiff lacked "working knowledge of the Community Care (sic) Doctrine."

159. As a consequence of the Defendants' actions, the Plaintiff has been caused to suffer emotional distress, loss of income, attorney's fees and related damages, for which he seeks financial compensation.

160. As a result of the above-described actions, Plaintiff has suffered substantial damages, including significant physical injuries, lost salary and benefits, damage to his career and emotional distress.

THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.
WHEREFORE, the Plaintiff, Edward Slocum, respectfully requests that this Court:

1. Enter judgment in his favor on each Count of this Complaint;
2. Award him compensatory damages, including, but not limited to, loss of pay and emotional distress damages;
3. Award the Plaintiff his costs and attorneys' fees;
4. Award the Plaintiff multiple and/or punitive damages; and
5. Award the Plaintiff such other relief as this Court deems just, equitable and appropriate.

        Respectfully submitted,
        For the Plaintiff, Edward Slocum
        By his attorney,

        LAW OFFICES OF TIMOTHY M. BURKE

        */s/Timothy M. Burke*
        Timothy M. Burke BBO # 065720
        160 Gould Street, Suite 100
        Needham, MA 02494-2300
        (781) 455-0707

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date. Paper copies will be mailed to those listed as non-participants on the ECF system.

Dated: 11/05/2020         /s/ Timothy M. Burke